IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLIE EAKLE, | : |
| | : |
| Plaintiff | : CIVIL NO. 4:CV-05-1233 |
| | : |
| v. | : (Judge Jones) |
| | : |
| Superintendent TENNIS, et al., | : |
| | : |
| Defendants | : |

## **ORDER**

## **July 14, 2006**

Charles Eakle, an inmate formerly confined in the Smithfield State Correctional Institution ("SCI-Smithfield"), in Huntingdon, Pennsylvania, filed this civil rights action filed pursuant to 42 U.S.C. § 1983.[1]  The Plaintiff alleges that Defendants have denied him the opportunity to have a cellmate because staff at SCI-Rockview and SCI-Smithfield have told him they do not want to promote homosexual activity.  Plaintiff names as Defendants various officials and employees of the Pennsylvania Department of Corrections, most of whom are employed at either SCI-Smithfield or SCI-Rockview, including SCI-Smithfield Superintendent John A. Palakovich, SCI-Rockview

---

1. Plaintiff is currently confined in the State Correctional Institution, in Graterford, Pennsylvania.

Superintendent Tennis, and former SCI-Rockview Superintendent Meyers.

Presently pending before the Court is Defendants' Motions to Dismiss the action, in which Defendants argue that Eakle has failed to exhaust available administrative remedies.[2] (Rec. Docs 21, 35, 37). The Motions have been fully briefed and are ripe for disposition. For the reasons set forth below, Defendants' Motions to Dismiss will be granted.

**Background[3]**

Plaintiff alleges that from approximately June 2002 to September 2004, he has contacted numerous staff members at SCI-Rockview and SCI-Smithfield and requested that his "'Z' Code single cell status" be changed so that he could have a cellmate of his

---

2. In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit addressed the issue of whether the Defendants in Spruill properly identified their motion as one for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). The Court noted that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment. Id. at 223 (citing Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003)); see also Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002)("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss"); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances). Accordingly, the records submitted by Defendants are indisputably authentic records which may be considered by this Court without converting the motion to dismiss to a motion for summary judgment.

3. The statement of factual background is taken from the complaint, the brief attached to the complaint, the amended complaint, (docs. 1, 32 ), and the administrative remedy documents submitted by Defendants. (Rec. Doc. 52, Exs. 1, 3, 4).

2

choosing. (Rec. Docs. 1, 32). In that time period, Plaintiff has received misconducts for being in another inmate's cell, breaking cell restriction, and being in an unauthorized area. Id.

> On July 30, 2003, Plaintiff submitted Grievance No. 57949-03, alleging that:
>
> On January 16, 2003, I had spoken to my counselor, Mr. Knapp about getting rid of my "Z" code. He had replied I am not going to double cell you, [and] to stop promoting homosexual activity.
>
> On January 19, 2003, I had received a misconduct for being in somebody else's cell when I was not.
>
> On January 24, 2003, Mr. Knapp had stopped in the RHU and had stated that PRC had placed me on the "Z" code.
>
> On February 2, 2003, I had sent a request to Vivieonal of the PRC and stated every thing to him about my "Z" code and how he had told me to speak to my counselor about getting rid of my "Z" code.
>
> On February 25, 2003, I had sent a request to the Unit Manager, Mr. Morningstar, [and] Mr. Knapp asking to get my "Z" code removed due to the fact of mental anguish and my seizures.
>
> On June 24, 2003, I had received a reply back from Mr. Knapp, stating that on November 29, 1999, I had allegedly performed oral sex with a cellie, Richard Burk on B/C, which was not forced, also stated I admitted to having sex with a Paul Letmattes, and he suggests at this time, he recommends that I keep my single cell status.
>
> I would like a cellie of my choice due to my protection and the protection of security of the institution.

3

(Rec. Doc. 52, Ex. 3). On August 8, 2003, Grievance Officer Morningstar responded to Grievance No. 57949-03 with the following:

> I have interviewed Mr. Eakle's grievance and found it without merit. The Unit Team reviewed Mr. Eakle's "Z" Code status as part of his Annual Case Review in July 2003. It was determined that in the best interests of institution security that the "Z" Code be retained. If Mr. Eakle feels there is a medical reason for the "Z" Code to be removed, the medical department should notify his counselor, Mr. Knapp of this need. As of this date we have not received any notification.

(Rec. Doc. 52, Ex. 3, Official Inmate Grievance Initial Review Response). Eakle did not appeal Grievance No. 57949-03 to final review. (Rec. Doc. 21, Ex. A, Declaration of Sharon M. Burks, Chief Grievance Coordinator, at ¶ 13 ).

On January 12, 2005, Eakle submitted Grievance No. 107065-05, challenging the DOC's policy prohibiting sexual contact between inmates. (Rec. Doc. 52, Ex. 4, Official Inmate Grievance). Plaintiff believes that he is being discriminated against, claiming that "homosexuality is not a crime" and that he is being "punish[ed] for being or trying to be [himself]. Id.

On January 25, 2005, Unit Manager Royer responded with the following:

> Inmate Eakle files this grievance, apparently alleging that DOC policy in some way discriminates against him. He was interviewed with CO Sullivan on 01-19-05. During the course of that interview, he, at different times, referred to himself as a homosexual and stated that he is a woman. I explained to inmate Eakle that DOC policy covers all inmates engaging in

4

> sexual acts whether consensual or not consensual. This violates DOC policy. This is true for all inmates, not just him.
>
> The conversation during this interview with inmate Eakle was rather wide-ranging and at times disjointed. At times, he appeared to be questioning the reason he was assigned single cell status. Then he would make the claim he was really a woman, not a man. His thinking appeared to be very paranoid and scattered. For this reason, I will make a referral to the mental health staff for evaluation and recommendations. As for the grievance, it is dismissed as being frivolous and without merit. The DOC has rules for all inmates to follow. Eakle is certainly not being discriminated against due to any rules which forbid sexual relations amongst the inmate population.

(Rec. Doc. 52, Ex. 4, Official Inmate Grievance Initial Review Response). Eakle then filed an appeal of Grievance No. 107065-05 to Superintendent Palakovich. On February 2, 2005, Superintendent Palakovich denied Eakle's appeal, stating the following:

> I have reviewed your appeal to grievance #107065-05 received on February 1, 2005. You claim the DOC policies discriminate against homosexuals in your initial grievance. Mr. Royer correctly advised that DOC policies are designed to protect all individuals. The current statutes prohibit any sexual contact between inmates as well as inmates and staff. This includes consensual sex. Officer Sullivan obviously directed you to wear you cap with the bill in the front. This is not discrimination but only enforcement of procedures. I find no basis for your appeal and therefore it is denied.

(Rec. Doc. 52, Ex. 4, Response to Grievance Appeal No. 107065-05). Although Eakle filed a grievance to the Secretary's Office of Inmate Grievances and Appeals, by letter dated February 18, 2005, his appeal was returned to him for the following reasons:

> This is to acknowledge receipt of your letter/documents to this office regarding your appeal to the above reference grievance number. Upon

> review of this letter/documents, it is the decision of this office to file your letter without action.
>
> This action is being taken due to your repeated failure to comply with the provisions of the DC-ADM 804, Inmate Grievance System, section VI. D., 1f, effective January 1, 2001. This policy specifically identifies the documents required for a proper appeal to final review. Additionally, the revised policy, effective January 3, 2005, under section VI. D., 1g, provides the same instructions.
>
> Our records indicate that you are more than familiar with the grievance process based upon the number of grievances you have filed; therefore, you should not have to be told each time you file an appeal of the documents required. You are hereby advised that any subsequent appeals to this office that do not include the necessary documentation in accordance with the above-cited provisions will be immediately dismissed.
>
> I trust you will heed this warning and comply with the policy as required.

(Rec. Doc. 52, Ex. 4, Feb. 18, 2005 letter from Secretary's Office of Inmate Grievance's and Appeals).   There is no record that Plaintiff ever provided the Secretary's Office of Inmate Grievances and Appeals with the required documents. (Rec. Doc. 52, Ex. 1, ¶ 14). Thus, Plaintiff never appealed Grievance No. 107065-05 beyond the appeal to the Superintendent. (Rec. Doc. 21, Ex. A, ¶ 14).

On June 20, 2005, Eakle filed the instant action in which he seeks compensatory and punitive damages, as well as to have "the DOC's employees change their rules and policy's (sic) towards homosexuals." (Rec. Docs. 1, 32).

**Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." Id. The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

"In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court, however, need not accept "bald assertions" or "legal conclusions." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

7

Likewise, the court need not "conjure up unpled allegations or contrive elaborately arcane scripts" to breathe life into an otherwise defective complaint. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). Consistent with these principles, the court must grant leave to amend before dismissing a complaint that is merely deficient. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**Discussion**

Defendants contend that Eakle's complaint should be dismissed for his failure to exhaust available administrative remedies. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion requires completion of the entire administrative process. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843-44 (E.D. Pa. 2000). If a prisoner fails to follow the required administrative procedures, including meeting deadlines, the inmate's action cannot be maintained. See Buckner v. Bussanich, No. 1:CV-00-1594, slip op. at 6 (M.D. Pa. April 3, 2001) (Caldwell, J.)("an administrative remedy is not made unavailable

simply because a prisoner failed to timely exercise his rights under the procedure. Otherwise, the prisoner could avoid the exhaustion requirement simply by refusing to pursue administrative remedies").

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804. See www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy ("DC-ADM 804"). First, the Pennsylvania DOC Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: the initial grievance submitted to the Facility Grievance Coordinator, an intermediate level of appeal to the Facility Manager, and a final level of appeal to the Secretary's Office of Inmate Grievances and Appeals. See DC-ADM 804 § VI; see also Booth v. Churner, 206 F.3d 289, 293 n. 2 (3d Cir.2000) (outlining the grievance review process).

The grievance procedure requires a prisoner to submit a grievance for initial review within fifteen working days after the event upon which the grievance is based. See DC-ADM 804 § VI, Part A(8). The inmate should state the facts upon which he is entitled to relief. See DC-ADM 804 § VI, Part A(7)("The inmate shall include a statement of facts relevant to the claim . . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also

9

include information on attempts to resolve the matter informally."). Indeed, in Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir.2004), the Third Circuit Court of Appeals recognized the significance in identifying the relevant facts and persons in order to bring a subsequent federal lawsuit:

> On this matter, the text is mandatory, or nearly so . . . To the extent that Brown's identity is a "fact [] relevant to the claim." – and it is– it was mandatory for Spruill to include it.  To the extent that Brown was a "person [] who may have information" or someone with whom Spruill made "attempts to resolve the matter informally" – and he was – Spruill was required to identify Brown if practicable.

Spruill, 372 F.3d at 234.  Moreover, the exhaustion requirement of § 1997e(a) is not satisfied simply "whenever there is no further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal) . . ." Spruill, 372 F.3d at 227-28.  Rather, § 1997e(a) requires that an inmate "avail[ ] himself of every process at every turn (which would require all appeals to be timely pursued, etc.)." Id.

In applying the above analysis to the factual background surrounding this action, it is readily apparent that Plaintiff has procedurally defaulted on his claims. Plaintiff's Grievance No. 57949-03 was never appealed to final review.  Plaintiff's appeal of Grievance No. 107065-05 to the Secretary's Office of Inmate Grievance and Appeals was

10

rejected, because it failed to comply with DC-ADM 804, VI., D., 1g; specifically, it did not include copies of plaintiff's initial grievance and his appeal to the Superintendent. (Rec. Doc. 52, Ex. 4). The record discloses that Eakle failed to resubmit the required documentation relative to his appeal. Id. Thus, Eakle has sustained a procedural default under the applicable DOC regulations.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Eakle offers no justification for his failure to appeal Grievance No. 57949-03 to final review, or to resubmit the appropriate documentation in accordance with the appropriate Department of Corrections Directive, to appeal Grievance No. 107065-05. Thus, Eakle is now foreclosed from litigating his claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers

11

to frivolous prisoner lawsuits." 372 F.3d at 230.  In <u>Pusey v. Belanger</u>, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied <u>Spruill</u> to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance.  In <u>Berry v. Kerik</u>, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances.  In <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in <u>Pozo</u>, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."  These precedents support dismissal of this action for Eakle's failure to pursue his administrative remedies with respect to his claims.  Accordingly, Defendants' Motions to Dismiss the instant action will be granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motions to Dismiss (docs. 21, 35, 37) Plaintiff's action are **GRANTED**.

2. Defendants' Motions for Protective Orders (docs. 33, 39) are **DISMISSED** as moot.

3. Plaintiff's Motion to Appoint Counsel (doc. 45) is **DISMISSED** as moot.

4. Plaintiff's Motion for Preliminary Injunctive Relief (doc. 47) and Defendants' Motion for Enlargement of Time (doc. 49) to respond thereto, are **DISMISSED** as moot.

5. The Clerk of Court is directed to **CLOSE** this case.

6. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

                                              S/ John E. Jones III
                                              John E. Jones III
                                              United States District Judge